## MERCANTILE BANK *versus* COX & *al.*

Although two persons are partners doing business under the name of *one* of them only, a bill of exchange drawn on *him* and accepted, is presumed by law to belong to the *individual* to pay, and not to the partners. — *Per* APPLETON, J.

Of a promise to accept a bill of exchange.

G. W. C. & Co. were building a barque which was mortgaged to F. C. & W. B. V., and drew their bill of exchange on F. C., which was discounted by plaintiffs and most of the money was paid out for work done on the barque. F. C. refused to accept. On the return of the bill to plaintiffs, W. B. V. promised, that F. C. should accept and pay it. — *Held*, that plaintiffs could maintain no action on the bill against F. C. & W. B. V. *jointly*, nor *severally* against either.

Nor, under the *money counts*, could a recovery be had against either, as the loan was made to others.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

ASSUMPSIT on a draft of the following tenor:—

"$1200.                    Franklin, Nov. 24, 1847.

"Thirty days after date, for value received, pay to the order of Geo. W. Cutter, twelve hundred dollars and charge the same to account of owners of barque Cleona.

"Yours respectfully,         Geo. W. Cutter & Co.

"To Francis Cox, Esq., Merchant, 66 Commercial Street, Boston."              Indorsed, "Geo. W. Cutter."

This draft was discounted by plaintiffs and protested for non-acceptance. This suit is against Francis Cox & Wm. B. Vincent, as partners, under the name of Francis Cox. The writ also contained the usual money counts.

Most of the money received on this draft by the drawers. was paid out for labor on the barque Cleona.

The drawers were engaged in building vessels and lumbering, and in June, 1847, obtained a loan of $6000, of defendants, by a note signed by Cox and indorsed by Vincent. To secure this loan a mortgage was taken by the defendants upon the two vessels then building, one of which was called "Cleona." Subsequently, in September, a second mortgage was taken by defendants, on the Cleona, who made further advances to fit her for sea.

After this loan the builders had not funds sufficient to finish the vessel, and a draft of $500, similar to the one in suit, and about a month before, was accepted and paid by Cox. The witness stated he should not have drawn this draft without authority, but would not state, that Cox gave him specific authority, but presumed he did. The money was obtained to relieve the *Cleona* from the claims against her.

When the draft was returned protested, Vincent went into the plaintiffs' place of business, with Cutter, one of the drawers, and said, that Cox expected him to draw instead of Cutter; he should have been there in season to have done so, had he not been detained on the road; the draft was correct and he had received most of the money from Cutter; that Cox would accept it on the receipt of a letter he had already written from Ellsworth; that the draft

should be accepted and paid, and it was unnecessary to do any thing more about it.

No evidence was introduced showing any other connection of defendants in business than that concerning these two vessels of Cutter & Co.

After the Cleona was launched she was attached for mechanics' liens to the amount of $1841,97, which was paid by defendants.

The account between defendants, with their names in full, and the owners of the barque was put into the case, consisting of a great variety of items, among which was one for commissions on the sums by them advanced.

There was evidence tending to show, that Vincent merely assisted Cutter & Co., in paying out the avails of this draft to the workmen on the Cleona, and that it was done for the benefit of Cutter & Co., and also tending to show there was no partnership between the defendants.

The Court were authorized to find the facts, and render a legal judgment thereon.

*J. A. Peters*, for defendants.

1. The discounting of this draft was in violation of law and no action can be maintained thereon. 17 Mass. 258; 26 Maine, 464; 22 Maine, 488.

2. But if maintainable we were not partners. Story on Partnership; 30 Maine, 387; 6 Greenl. 76; 6 Pick. 120.

3. But if partners the draft was upon an individual alone, and cannot bind the partners. The individual on whom it was drawn refused to accept.

4. Vincent could not bind himself on the paper, it was the debt of another.

5. Nor can the count for money had and received avail. The money was for the use of Cutter & Co.

*Cutting*, for plaintiffs.

APPLETON, J.— From the evidence it appears, that the firm of George W. Cutter & Co. were, in the year 1847, extensively engaged in shipbuilding and in lumbering, at

Franklin in this State; that Vincent, one of the defendants, then was and for years previous had been employed as a book-keeper; that Cox, the other defendant, was a merchant transacting business on his own account; that the defendants were not then and never had been associated as general partners, nor had they ever been jointly interested or connected in any business, except in the particular transaction out of which the present claim originated.

In June, 1847, the firm of Cutter & Co. being in need of funds, to complete the vessel they were then building, it is in proof that George W. Cutter applied to the defendant Cox, to assist him with funds for that purpose; that Cox replied, "that if he could get any one to assist·him, he would do as much as any one else, and go on equal risk with him," and was willing to aid him to the extent of half which might be required. An arrangement was ultimately made, by which Cox made his note for the amount of seven thousand dollars, payable to the order of Vincent, who indorsed the same, and on this paper the money necessary for George W. Cutter & Co. was raised. At the same time a note was given by George W. Cutter & Co. for the same amount, to William B. Vincent and Francis Cox or order, payable in four months, and a mortgage was made of the brig called Cornelia and the barque Cleona which they were then building, to secure the payment of the note then given at its maturity. At the same time, and as a part of the same mortgage, it was agreed on the part of the mortgagers, that the mortgagees might sell at public or private sale one or both of the vessels mortgaged, as might be required to pay whatever might be due on the note, if not paid at its maturity.

It thus appears, that on June 17, 1847, the defendants were joint mortgagees of certain property to secure a note given to them in their own names, and payable to their order, the consideration of which was the several note of Cox payable to Vincent, and by him indorsed, and of which by the agreement between them, each was to pay his half.

But no partnership is here created. If nothing more had ever been done, it could not have been alleged, that a co-partnership had been created. The defendants were joint mortgagees, but as joint mortgagees they were not co-partners. The mortgage could not be transferred by one without the consent of the other. The relation of the defendants was like that of the joint owners of a horse or any other chattel. Each controlled his own interest. Neither controlled or could rightfully transfer or control the interest of his co-mortgagee.

The position of these parties remained unchanged until September 17, following, when George W. Cutter & Co., anticipating need of further aid to complete the vessel, executed a mortgage of the barque Cleona to the same mortgagees to secure them against any further advances they might make in completing her for sea. The mortgagees having thus obtained a second mortgage made further advances to a large amount.

It does not appear that any of these advances were made by defendants as partners, or that any act was done by them indicating the existence of that relation. There is nothing in the evidence to negative the idea that they were made by each furnishing his share from his individual funds. The mortgage is from Cutter & Co., describing them as co-partners, to William B. Vincent and Francis Cox. The account current between the parties describes them in the same way. Upon that account, as settled, is minuted, "Balance $5328,87, Feb. 18, 1848. Due William B. Vincent and Francis Cox, one half each, viz., W. B. Vincent $2664,43½, and Francis Cox 2664,43½." There is not the slightest pretence that any written agreement of co-partnership was ever entered into between them. So far as any inference can be drawn from the papers as exhibited, it is against the existence of that relation.

The part owners or builders of ships are not from that fact, to be regarded as partners. Neither are the co-mortgagees of ships, owning a less interest, to be any more

treated or held as partners from holding security upon a part than if they owned the whole.

When the last mortgage was given the mortgagees were under no legal obligation to make advances; they had made no agreement, so far as the evidence discloses, by which they were to furnish any sum whatever, or by which they had brought or agreed to bring their several funds together for a common purpose. Either was at liberty to decline advancing. Neither had authority to pledge the credit of the other to any amount of advances. Nothing indicates that either had any authority to sign any contract or to pledge in any mode the credit of the other without his consent. They were in the common condition of men who, having aided an insolvent firm to a large amount, might, from the necessity of their position, be obliged for self-protection to make still larger advances. But of that necessity and of the extent of such advances each was to judge for himself. Each advance was a completed transaction. Whether the advances were by each paying half at the time, or by giving their joint and several note, is entirely immaterial, as when made, the relation of the parties was still that of co-mortgagees. Neither could compel future action or control their common interest.

The defendants, then, have in no way entered, as between themselves, into the relation of partnership with its corresponding rights, duties and obligations.

The defendants have not, by word or by act, held themselves out to the world as partners, and cannot therefore be held liable as such upon that ground.

2. But assuming there was a partnership, the plaintiffs have even then failed to show any right to recover.

The draft in suit is drawn by George W. Cutter & Co. upon Francis Cox, Esq., Merchant, 66 Com. street, Boston. The plaintiffs declare against the defendents "as co-partners in the name and style of Francis Cox."

The draft purports to be drawn upon an individual, and if it had been accepted, would have bound only the party so

accepting. Such is the presumption of law. A firm may be constituted doing business in the name and style of one of its members, and the co-partnership will be bound by the signature of such name, when relating to the business of the firm. But in such case the presumption would be, that the signature of the individual was binding on him alone. A draft upon, or an acceptance, would primarily bind only the person accepting.

But in this case there is an entire failure of proof that there was any co-partnership between these defendants, under the name of Cox. If the draft had been upon Vincent rather than Cox, the proof would equally well have sustained the suit against the defendants, as co-partners, under the name and style of W. B. Vincent.

If there was any firm, its name and style was " William B. Vincent and Francis Cox," for the mortgage of the firm of Cutter, & Co., was made to them in that name, and they are so described in the accounts between the parties and adjusted by them.

The evidence then fails to show a partnership in the name and style of Francis Cox, or that any draft has been drawn upon the defendants as partners.

3. The draft having been drawn upon Cox and by him not accepted, the inquiry arises whether he has made himself personally liable. The evidence shows that Cutter & Co. had drawn a previous draft on the defendant which he accepted and paid. But the acceptance and payment of one draft is no proof of a general authority to draw and a general promise to accept. Whatever may have been said or done by Cox was *before the draft was drawn.* The witness Cutter says, " he did not recollect of saying to Cox, that he should want more than $500; that he should not have drawn said draft unless he had been authorized; that he never drew a draft without authority; that he would not state that Cox gave him specific authority to draw the $1200 draft or not, but he presumed he did; that he presumed he had a conversation and understanding with Cox at the time he drew, that

he should accept, and that he informed him at that time of his drawing; that he was not aware of ever drawing a draft without giving information to the person upon whom the draft was drawn; that he had as much authority to draw the $1200 draft as he had the $500 draft." But no authority, even verbal, is here shown to bind the defendants. The witness, at most, says he presumes he had authority, but discloses no facts to justify his presumption. He will not state that Cox ever gave him specific authority to draw. He discloses no fact showing such authority, but only his conclusions and presumptions from facts withheld, if they existed, but at any rate not made known.

But, as between the drawer and drawee, a promise or agreement to accept a bill which should afterwards be drawn, has never been deemed an acceptance. Story on Bills, § 249. But, as between the drawee and a third person who has taken a bill upon the faith of a promise to accept, it has been held to be an acceptance; but in such case, when the promise is in writing, it should describe the bill to be drawn in terms not to be mistaken, so as to identify and distinguish it from all others; and that it should be received by the person taking it upon the faith of such promised acceptance. Story, § 249, and cases cited. These elements are entirely wanting. *Howland* v. *Carson*, 3 Har. 453; Chitty on Bills, 285.

In the cases just referred to the promise was in writing, but in the case at bar the agreement, such as it was, is verbal. It seems that a parol promise to accept a non-existing bill, will not support an acceptance. *Edson* v. *Fuller*, 2 Foster, 183. *Strohiehu* v. *Cohen*, 1 Spurs. 349; *Kennedy* v. *Geddes*, 8 Porter, 263.

It is obvious that Cox was not bound by any thing said or done, before the drawing of the bill, to accept the same; and if he had so promised, there is no proof, that the plaintiffs took the draft relying on such promise.

There is no evidence that Vincent was the agent of Cox, or in any way authorized to bind him by any promise he

might make for or on his account. The declarations or statements of Vincent, whatever may be their effect as to himself, can upon no principle affect the rights of Cox.

4. Nor has Vincent bound himself personally. He said that Cox would accept the draft; that the draft should be accepted and paid, but declined drawing a new draft or in any way becoming a party to the one drawn. The draft was not drawn on him. All this was after the money had been loaned to Cutter & Co. It is difficult to perceive how this can bind Vincent in this suit as jointly liable with Cox. He did not promise to pay. If he had expressly promised to pay, there would be no consideration for such promise. It would be to pay for the debt of another, that is, of Cutter & Co., and would be void by the statute of frauds. He can no more be held on the draft, than could any other individual who had expressed strong convictions, or had promised that the drawee would accept and pay a draft of which he had refused acceptance.

If the statements, as reported by Cutter, are taken most strongly against him, they are only binding on him, and in no way, either directly or by implication, purport to bind the alleged firm. No joint promise can by the most forced construction be gathered from the evidence.

The action cannot be maintained against the defendants upon the draft, either jointly or severally; not as against both, for they have never accepted or promised to accept; not against Cox, for he has refused to accept; nor against Vincent, for it is not drawn on him, nor has he ever accepted or promised to pay it.

5. But it is insisted that the plaintiffs can recover of the defendants upon the money counts.

But the position of the plaintiffs is not perceived to be such as to entitle them to recover. The draft was by Cutter & Co. upon Cox, and the money was loaned upon that paper. The loan was to Cutter & Co., and upon their credit, and when they received it, it ceased to be the money of the bank. The bank had no *more* right to control its

disposition in this than in any other case of a loan to insolvent creditors. If it was lost, the loss was that of Cutter & Co. They had the same right to it that any borrower has to money loaned him.

Because portions of the money went to discharge liens upon property upon which the defendants had a mortgage, does not alter the case. Part went to pay lien debts, part was paid in Bangor and elsewhere on other debts of Cutter & Co. It would be impossible to distinguish what amount went for one purpose and what for another.

The fact, that part of it may have relieved the property of the defendants from superincumbent liens, confers no rights of recovery on the plaintiffs, because when thus paid, the funds with which the payment was made were no longer theirs. They held the paper of Cutter & Co. as the consideration of the loan. If they could follow this in the hands of the defendants, they would be equally entitled to follow it into the hands of any individual, who may have received it in payment of his claims.

The result is, that the plaintiff must become nonsuit.

RICE and HATHAWAY, J. J., concurred in the result only.

TENNEY, J., non-concurred.